UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENNETH ALLEN,

            Plaintiff,

v.

DANELLE WATTS and THE
HANOVER INSURANCE GROUP,

            Defendants.
_____/

Case No. 2:19-cv-12024

HONORABLE STEPHEN J. MURPHY, III

### OMNIBUS OPINION AND ORDER

Plaintiff brought the present diversity complaint against Defendant Hanover Insurance Group for breach of contract that arose from a car accident in which Plaintiff and Defendant Watts were involved. ECF 1. There are several pending motions before the Court: Plaintiff's second summary judgment motion, ECF 59, and Hanover's motions for summary judgment against Plaintiff and to amend its affirmative defenses, ECF 58, 60. The Court ordered the parties to mediation with retired Judge Daniel Ryan, ECF 79, but mediation failed. The Court reviewed the briefs for the pending motions and finds that a hearing is unnecessary. *See* E.D. Mich. LR 7.1(f). For the following reasons, the Court will deny both summary judgment motions, ECF 58, 59, and grant Hanover's motion to amend its affirmative defenses, ECF 60.

## BACKGROUND

Plaintiff's mother applied for underinsured motorist coverage insurance with Hanover. ECF 58-3, PgID 505. The application required Plaintiff's mother to list all "residents and dependents [] and regular operators." *Id.* She did not list Plaintiff on the application. *Id.* Hanover later issued the policy to Plaintiff's mother and listed the policy address as 18701 Whitcomb in Detroit. ECF 58-4, PgID 507.

Apart from Plaintiff's cousin and his mother, the underinsured motorist coverage also insured the "family member[s]" of Plaintiff's mother. ECF 58-5, PgID 510. The policy defined a "family member" as "a person related to you by blood, marriage or adoption who is a resident of your household." ECF 58-6, PgID 514. But the policy did not cover "any 'insured' who ha[d] made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage [was] sought under th[e] policy." ECF 58-7, PgID 516.

Several months after Hanover issued the policy, Plaintiff was a passenger in a car accident with Defendant Watts. ECF 58-8, PgID 519. About a month after the accident, Plaintiff signed an affidavit of no insurance that stated when the accident occurred, he was residing at 15574 Log Cabin Street in Detroit. ECF 58-9, PgID 522. Plaintiff's operating license, however, at the time listed his mother's house as his address. *Id.* The affidavit also explained that Plaintiff "use[d] his mother's address solely for the purpose of receiving mail" and that he had lived at several other Detroit residences. *Id.* Plaintiff's lawyer ultimately submitted the affidavit to Watts's insurer to support receipt of Personal Injury Protection benefits. ECF 58-10, PgID 523.

2

Five months later, Plaintiff's mother appeared at an Examination Under Oath with Plaintiff's lawyer and testified that Plaintiff did not live with her then or on the date of the accident. ECF 58-11, PgID 525. Plaintiff's mother conceded that Plaintiff had not lived with her for several years, had not paid bills at her house, and that Plaintiff lived at the Log Cabin address. *Id.* at 527. She also mentioned that although Plaintiff was the legal owner of her house, he did not live there on a day-to-day basis. *Id.* at 526, 527.

On the same day, Plaintiff appeared at a similar Examination with his lawyer. ECF 58-12, PgID 533. There, Plaintiff testified that he had not stayed at his mother's home for years. *Id.* at 534. Instead, he was staying "back and forth" between the Log Cabin address and another Detroit residence on Turner Street during the last two years. *Id.* But Plaintiff kept very few belongings at either address. *Id.* Rather, Plaintiff kept most of his belongings—like clothing and furniture—at his mother's house. *Id.* at 535, 542.

Plaintiff suggested that he had been staying at the Log Cabin residence because it "was more convenient for [him] to get to work[,]" *id.* at 535, and at the Turner Street residence because it was the home of his children's mother, *id.* at 534. But his living situation on Turner Street was "up and down[.]" *Id.* at 535.

Plaintiff also noted that although he owned his mother's house, he did not pay bills there. *Id.* at 535. But he had his mail delivered there because it was "a more stable home." *Id.* at 536. As a result, Plaintiff would retrieve mail from his mother's house about twice a week. *Id.* at 537. When someone asked for Plaintiff's address, he

3

gave his mother's address—the same address listed on his Michigan identification card. *Id.* at 536–37.

Plaintiff described that he would choose where to sleep each night in light of the "circumstances [] on that particular day." *Id.* at 538. In the weeks just before the accident, Plaintiff chose to stay at the Log Cabin address three to five nights a week. *Id.* at 536–37. Although Plaintiff was not sure how often he stayed at his mother's house the week before the accident, he stated did not have any intent to stay regularly at the Log Cabin address. *Id.* at 538. In total then, Plaintiff would spend about one night a month at his mother's house. *Id.*

Almost two years later, Plaintiff's lawyer sent a demand letter to Hanover requesting that Hanover pay Plaintiff the million-dollar underinsured motorist policy. ECF 58-13, PgID 543. In the letter, Plaintiff's lawyer explained;

> Auto Club Group [AAA] has agreed to pay [Plaintiff] its policy limits of $100,000.00 in settlement of his claims against them. However, pursuant to the terms of your policy any judgment for damages arising out of a suit brought without your written consent is not binding on you. As a result, on behalf of Mr. Allen I seek your written consent to settlement of The Auto Club Group claim for $100,000.00 and I seek additional payment of damages for Mr. Allen under your policy in an amount of $1,000,000.00.
> *Id.* at 543–44.

Hanover responded to the letter and asked for more documents, but Plaintiff did not respond. ECF 58-14, PgID 545. In turn, Hanover denied Plaintiff's request because he had no coverage under his mother's policy. ECF 58-15. Plaintiff then filed the present action. ECF 1.

4

During Plaintiff's deposition here, he claimed that he did not know how many nights he had spent at his mother's house before the accident. ECF 62-1, PgID 773. Plaintiff did not disagree with his testimony at his Examination that he had spent the night once a month at his mother's house before the accident and that his stays there were "very, very seldom[.]" *Id.* But Plaintiff disagreed with the affidavit that he had signed shortly after the accident. *Id.* at 774. In fact, Plaintiff stated that the statement in his affidavit about not residing at his mother's house since 1997 was not true because he had "always resided" there. *Id.* Not only did Plaintiff dispute that part of the affidavit, but he also claimed that he never "lived" at the Log Cabin address, despite the affidavit explaining that was his residence. *Id.* at 783. Plaintiff reasoned that when he signed the document, he did not prepare the affidavit or understand what the term "resided" meant. *Id.* Despite the contradictory affidavit, Plaintiff contended that he had "always lived" at his mother's house on the day of the accident. *Id.* at 783, 787–88.

Finally, two months before the dispositive motion deadline, the parties stipulated to certain facts. ECF 46. The parties stipulated that when Plaintiff's lawyer sent the demand letter to Hanover, ECF 58-13, "Plaintiff did not have [a settlement] offer from AAA, on behalf of Defendant Watts[,]" ECF 46, PgID 328.

**LEGAL STANDARD**

I. <u>Summary Judgment</u>

The Court must grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

5

judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party must identify specific portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party may not simply rest on the pleadings but must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted) (quoting Fed. R. Civ. P. 56(e)).

A fact is material if proof of that fact would establish or refute an essential element of the cause of action or defense. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over material facts is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences "in the light most favorable to the non-moving party." *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citations omitted).

II. <u>Amendment of Pleadings</u>

Federal Rule of Civil Procedure 15(a)(2) states that after a responsive pleading is filed, a party may only amend its pleading with the written consent of the opposing party or with leave of the Court. The rule also states that "[t]he [C]ourt should freely give leave when justice so requires." *Id.*; *see Foman v. Davis*, 371 U.S. 178, 182 (1962). To resolve whether to grant leave to amend a pleading, the Court relies on six factors: (1) "undue delay in filing," (2) "lack of notice to the opposing party," (3) "bad faith by

6

the moving party," (4) "repeated failure to cure deficiencies by previous amendments," (5) "undue prejudice to the opposing party, and" (6) "futility of [the] amendment[.]" *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 458–59 (6th Cir. 2001) (citation omitted).

## DISCUSSION

The Court will first address Plaintiff's summary judgment motion. ECF 59. After, the Court will address Hanover's motion to amend its affirmative defenses, ECF 60, and then its summary judgment motion, ECF 58.

I. <u>Plaintiff's Summary Judgment Motion Against Hanover</u>

Under Local Rule 7.1(b)(2), a party must obtain leave to file more than one summary judgment motion. The Local Rule explains that "a challenge to several counts of a complaint generally must be in a single motion." E.D. Mich. L.R. 7.1(b)(2). Plaintiff already moved for summary judgment, ECF 57, and never sought leave to file a second summary judgment motion. The Court will therefore deny the second motion, ECF 59, and strike it from the record along with Hanover's response, ECF 63. *See Murphy v. Lockhart*, 826 F. Supp. 2d 1016, 1037 (E.D. Mich. 2011) ("The failure to obtain such leave is fatal to the defendant's second motion for summary judgment.").

II. <u>Hanover's Motion to Amend its Affirmative Defenses</u>

Hanover moved to add an affirmative defense of fraud because it "first learned of the fraud committed by Plaintiff on May 28, 2020." ECF 60, PgID 685. Hanover's fraud defense hinges on the statement from Plaintiff's lawyer in the demand letter to Hanover that "Auto Club Group [AAA] has agreed to pay [Plaintiff] its policy limits

7

of $100,000.00 in settlement of his claims against them[.]" ECF 58-13, PgID 543; *see also* ECF 60-1, PgID 691. Plaintiff responded that allowing Hanover an amendment so late in the case would not only cause prejudice to Plaintiff, ECF 64, PgID 829, but an amendment would also be futile and barred from use by Federal Rule of Evidence 408, *id.* at 827–28. After reviewing the briefs, the Court will grant Hanover leave to amend its affirmative defenses.

First, "[d]elay by itself is not sufficient reason to deny a motion to amend. Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted." *Wade*, 259 F.3d at 458–59 (citation omitted). "When amendment is sought at a late stage in the litigation"—like now—"there is an increased burden to show justification for failing to move earlier." *Id.* at 459 (citing *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999)). In the Sixth Circuit, "allowing [an] amendment after the close of discovery creates significant prejudice[.]" *Duggins*, 195 F.3d at 834.

But Hanover did not have evidence of Plaintiff's alleged fraud until one month before the discovery cutoff. *See* ECF 46, PgID 327 (stipulated facts); ECF 47, PgID 343 (stipulated order extending discovery and dispositive motion cutoffs). Altogether, Hanover waited three months to move for amending its affirmative defenses—twenty days after the dispositive motion cutoff. ECF 60.

That said, "justice requires that [Hanover] be granted leave to amend its [answer] to include the fraud-based arguments, which were discovered through the discovery process." *Innovation Ventures, LLC v. N.V.E., Inc.*, No. 08-11867, 2009 WL

8

10664161, at *5 (E.D. Mich. Aug. 4, 2009) (granting leave to amend affirmative defenses after the defendant had moved for summary judgment); *see also Brewart v. Travelers Cas. Ins. Co. of Am.*, No. 13-11657, 2014 WL 12660031, at *2 (E.D. Mich. Aug. 5, 2014) (granting leave three months after the defendant discovered information to support amending its pleadings). Although Hanover had waited until after the dispositive motion deadline to seek leave to amend its defenses, the total delay was minimal.

Other Courts have denied leave to amend affirmative defenses when the motion to amend was far more delayed. *See, e.g., Duggins*, 195 F.3d at 834 (affirming a denial for leave to amend after the "underlying facts were made as part of the complaint" and "the dispositive motion deadline had passed"); *Mack v. State Farm Mut. Auto. Ins. Co.*, No 18-12908, 2020 WL 1527190, at *2 (E.D. Mich. Mar. 31, 2020) (denying leave to amend after a ten-month delay). But, because Federal Rule of Civil Procedure 9(b) requires Hanover to plead fraud with particularity, Hanover lacked adequate facts to plead a fraud defense with particularity until after it learned that Plaintiff never had a settlement offer from AAA. ECF 60, PgID 686. In short, Defendant's motion for leave to amend its affirmative defenses was not dilatory or in bad faith.

As for prejudice that Plaintiff may suffer if the Court grants the motion, Plaintiff's attorney created any prejudice by withholding the fact that there was no settlement agreement until one month before the discovery cutoff. *See* ECF 46, PgID 327. On that basis, Plaintiff could have avoided the whole issue if Plaintiff's attorney

9

promptly informed Hanover of the inaccuracy. Instead, Plaintiff avoided Hanover's request to admit that there was no settlement with Watts's insurance company. *See* ECF 34-2, PgID 202 (Hanover's request for admission to Plaintiff); ECF 37, PgID 251 (Plaintiff's response to Hanover's request for admission).

Last, Hanover's amendment is not futile or barred by Federal Rule of Evidence 408. For one, Hanover's proposed amendment would survive a motion to dismiss because it precisely alleged the fraudulent statement that Plaintiff "assert[ed] prior to the commencement of litigation that the underlying bodily injury policy limits had been tendered when in fact such a settlement offer had never been made." ECF 60-1, PgID 691. And the Federal Rules of Evidence do not affect whether Hanover may *plead* an affirmative defense; those rules affect only whether Hanover may *enter evidence* at trial to support the affirmative defense. *See* Fed. R. Evid. 410 ("[E]vidence of the following is not *admissible* . . . .") (emphasis added). In sum, the Court will grant Hanover leave to amend its affirmative defenses.

III.   Hanover's Summary Judgment Motion

Hanover asserted two grounds for summary judgment. Hanover first contended that Plaintiff was not covered by his mother's policy as a "family member[.]" ECF 58, PgID 483–86. Hanover alternatively argued that the policy's fraud exclusionary provision applied to Plaintiff. *Id.* at 486–90. The Court will address each argument in turn.

### A. "Family Member" Under the Policy

Michigan courts interpret insurance contracts like any other written contract. *Comerica Bank v. Lexington Ins. Co.*, 3 F.3d 939, 942 (6th Cir. 1993) (citations omitted). The Court therefore must enforce the policy's "ordinary and plain meaning[.]" *Wilkie v. Auto-Owners Ins. Co.*, 469 Mich. 41, 47 (2003).

The policy at issue offers underinsured motorist coverage to family members of Plaintiff's mother. ECF 58-5, PgID 510. And the policy defines a "family member" as "a person related to you by blood, marriage or adoption *who is a resident of your household*." ECF 58-6, PgID 514 (emphasis added). The parties disagree only about the latter half of the definition—whether Plaintiff is a resident of his mother's household. ECF 58, PgID 484; ECF 62, PgID 712–13.

The plain meaning of the term "resident" is "[s]omeone who lives permanently in a particular place; specif[ically], a person who has established a domicile in a given jurisdiction." *Resident*, Black's Law Dictionary (11th ed. 2019). A "household" is defined as "[a] group of people who dwell under the same roof." *Household*, Black's Law Dictionary (11th ed. 2019). Based on these two terms, the Court finds that the plain meaning of the phrase is whether Plaintiff established his domicile on the date of the accident at his mother's house.

Michigan courts determine a person's domicile based on the totality of four factors: "(1) the subjective or declared intent of the person of remaining, either permanently or for an indefinite or unlimited length of time" in the residence[,] "(2) the formality or informality of the relationship between the person and the members

11

of the household," "(3) whether the place where the person lives is in the same house, within the same curtilage or upon the same premises," and "(4) the existence of another place of lodging by the person" alleged to be a resident. *Workman v. Detroit Auto. Inter-Ins. Exch.*, 404 Mich. 477, 496–97 (1979) (citations omitted). The Court may consider other factors like the individual's mailing address, the address listed on the individual's drivers license and official documents, whether the person has possessions in the insured's home, whether the person has a bedroom at the insured's home, and whether the person depends on the insured for support. *Williams v. State Farm Mut. Auto. Ins. Co.*, 202 Mich. App. 491, 494–95 (1993). In all, the Court must balance each factor against the others, weighing the totality of all factors. *Workman*, 404 Mich. at 496.

For the first *Workman* factor, there is a dispute of material fact. Admittedly, Plaintiff signed an affidavit shortly after the accident that stated he did not reside at his mother's house and that he used the house only to receive mail. ECF 58-9, PgID 522. In Plaintiff's Examination Under Oath, he testified that he owns his mother's house, lives back and forth between residences, keeps most of his belongings at his mother's house, finds his mother's house is "a more stable home[,]" and tells individuals that his address is his mother's address. ECF 58-12, PgID 534–35, 537, 542. Because Plaintiff chose where to sleep for the evenings before the accident depending on the circumstances "on that particular day," *id.* at 538, there is a question of fact about where Plaintiff intended to permanently reside. What is more, Plaintiff justified the contradictory affidavit by reasoning that he did not prepare the

12

affidavit or understand what the term "resided" meant. ECF 62-1, PgID 783. Along with that justification, Plaintiff claimed that he lived at his mother's house on the day of the accident. *Id.* at 783, 787–88. Altogether, the first *Workman* factor is inconclusive.

For the second *Workman* factor, Plaintiff had both a formal and informal living relationship at his mother's house. For example, Plaintiff never paid any bills at the house, ECF 58-12, PgID 535, but he owned the house, *id.*, and kept most of his belongings there. *Id.* at 535, 542. Thus, the second *Workman* factor is also inconclusive. As for the third *Workman* factor, no evidence suggested that Plaintiff did not stay in the same premises as his mother at her house.

On the last *Workman* factor, there is also a dispute of fact because Plaintiff stated that he had lived between three residences at the time of the accident. *Id.* at 534, 536–38. By contrast, Plaintiff's mother explained that he did not live with her at the time of the accident. ECF 58-11, PgID 525. Ultimately, the evidence supporting the *Workman* and *Williams* factors is either contradictory or disputed.

Still, Hanover reasoned that the Court should ignore Plaintiff's deposition testimony that contradicted his affidavit. ECF 65, PgID 839–40. In support, Hanover cited Michigan Appellate Court cases for the rule that Plaintiff cannot "raise an issue of fact by submitting an affidavit that contradicts [his] prior testimony." *Id.* at 839. The Sixth Circuit has also established a similar rule that provides "a district court deciding the admissibility of a post-deposition affidavit at the summary judgment stage must first determine whether the affidavit directly contradicts the nonmoving

13

party's *prior* sworn testimony." *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 908 (6th Cir. 2006) (citation omitted) (emphasis added). "A directly contradictory affidavit should [then] be stricken unless the party opposing summary judgment provides a persuasive justification for the contradiction." *Id.* (citation omitted).

But the Court will not strike Plaintiff's deposition testimony for two reasons. First, the Sixth Circuit has not held that the Court may strike deposition testimony taken during discovery that came *after* the deponent made a contradictory affidavit. *See Bush v. Compass Grp. USA, Inc.*, 683 F. App'x 440, 448–49 (6th Cir. 2017) (summarizing the Sixth Circuit's decision in *Aerel*). And second, Plaintiff justified the contradiction by reasoning that he did not prepare the affidavit or understand what the term "resided" meant. ECF 62-1, PgID 783. In the end, there is a genuine dispute about whether Plaintiff resided at his mother's home at the time of the accident.

### B. Fraud Exclusionary Provision

Hanover alternatively claimed that Plaintiff's lawyer "made fraudulent statements in connection with his claim for Underinsured motorist benefits[.]" ECF 58, PgID 488. Because of that, Hanover moved for summary judgment under the policy's exclusionary fraud provision.

To prove that an insured committed fraud, "an insurer must show that (1) the misrepresentation was material, (2)" "it was false, (3)" "the insured knew that it was false at the time it was made or that it was made recklessly, without any knowledge of its truth, and (4)" "the insured made the material misrepresentation with the intention that the insurer would act upon it. A statement is material if it is reasonably

14

relevant to the insurer's investigation of a claim." *Bahri v. IDS Prop. Cas. Ins. Co.*, 308 Mich. App. 420, 424–25 (2014) (citation omitted).

In support, Hanover claimed that the parties' stipulation, ECF 46, undisputedly proves all four elements. But "whether an insured has committed fraud is [generally] a question of fact for a jury to determine." *Gable v. Citizens Ins. Co. of the Midwest*, No. 341757, 2019 WL 1460182, at *4 (Mich. App. Apr. 2, 2019) (quoting *Meemic Ins. Co. v. Fortson*, 324 Mich. App. 467, 473 (2018)). What is more, fraud "must be clearly prove[n] by clear, satisfactory, and convincing evidence." *Cooper v. Auto Club Ins. Ass'n*, 481 Mich. 399, 414 (2008). And summary judgment "is inappropriate when questions of motive, intention, credibility, or other conditions of mind are material issues." *Gable*, 2019 WL 1460182, at *4 (citations omitted).

Here, the stipulation is not definitive evidence of the third factor that "the insured knew [the statement] was false at the time it was made or that it was made recklessly, without any knowledge of its truth[.]" *Bahri*, 308 Mich. App. at 424; *see* ECF 46, PgID 328. Rather, the stipulation merely explained that "at the time [of] the correspondence[,]" "Plaintiff did not have an offer from AAA, on behalf of Defendant Watts[.]" ECF 46, PgID 328. Without more information about Plaintiff's knowledge at the time, there is a material dispute of fact. In all, because there are material disputes of fact relating to Plaintiff's residency at the time of the accident and the policy's fraud exclusionary provision, the Court will deny Hanover's summary judgment motion.

15

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Defendant Hanover's summary judgment motion against Plaintiff [58] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's summary judgment motion against Defendant Hanover [59] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's summary judgment motion [59] and Hanover's response brief [63] are **STRICKEN** from the record.

**IT IS FURTHER ORDERED** that Defendant Hanover's motion to amend its affirmative defenses [60] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Hanover must **FILE** its amended affirmative defenses no later than **March 11, 2021**.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: March 1, 2021

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 1, 2021, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager